**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GREENPOINT MORTGAGE FUNDING, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 4498 |
| | ) | |
| **FAMILY FIRST MORTGAGE, INC.,** | ) | Judge Rebecca R. Pallmeyer |
| **STRAWTHER, ALLEN, HAROLD E. LUCAS, JR.,** | ) | |
| **THE EXPERTS IN REAL ESTATE APPRAISALS,** | ) | |
| **LTD., d/b/a INTELLECTUAL MANAGEMENT,** | ) | |
| **SHORE BANK, ANDREW DAVIS,** | ) | |
| **H.A.A. REAL ESTATE MANAGEMENT COMPANY,** | ) | |
| **OCEAN FINANCIAL CORPORATION,** | ) | |
| **BURNYSS PERRY, a/k/a BURNYSS KHAN, a/k/a** | ) | |
| **DEAN PERRY BURNYSS, KIRK AMBROSE,** | ) | |
| **and LADONNA COLEMAN,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Greenpoint Mortgage Funding, Inc. ("Greenpoint") brings this action against Defendants Family First Mortgage, Inc. ("Family First"), Strawther Allen ("Allen"), LaDonna Coleman ("Coleman"), The Expert in Real Estate Appraisals, Ltd., d/b/a Intellectual Management ("Intellectual Management"), Harold E. Lucas, Jr. ("Lucas"), ShoreBank, Andrew Davis, H.A.A. Real Estate Management Company ("H.A.A."), Ocean Financial Corporation ("Ocean"), Burnyss Perry ("Perry"), and Kirk Ambrose ("Ambrose"). The dispute arises from Defendants' alleged scheme to defraud Greenpoint in a mortgage loan transaction. Greenpoint alleges that in connection with a loan application that Family First submitted to Greenpoint on behalf of Coleman for a condominium purchase, Defendants supplied various fraudulent documents that Greenpoint relied upon in deciding to fund this loan. Specifically, Greenpoint claims that Family First and one of its loan officers, Allen, provided false information regarding Coleman's financial circumstances, as well as a fraudulent appraisal of the property that was prepared by Intellectual Management and its president, Lucas (collectively, "Intellectual Management").

Greenpoint includes five separate counts in its Second Amended Complaint. Count I is a breach of contract claim against Family First relating to a mortgage loan broker agreement between the two companies. Count II alleges negligent misrepresentation, and Count III is a fraud claim. The present dispute concerns Count IV, a claim for unjust enrichment, and Count V, in which Greenpoint alleges violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. Intellectual Management moves to dismiss both counts for failure to state a claim. For the reasons stated below, the motion is granted in part and denied in part.[1]

## FACTUAL BACKGROUND

As part of its business, Greenpoint originates and services residential mortgage loans. (2d Am. Compl. ¶ 2.) On March 12, 2001, Family First agreed to solicit and forward residential mortgage loan applications to Greenpoint as part of a Mortgage Loan Broker Agreement (the "Agreement"). (*Id.* ¶ 16.) Pursuant to the Agreement, Family First forwarded Coleman's loan application to Greenpoint in February 2002. (*Id.* ¶ 17.) Coleman purportedly sought the loan as a means of financing the purchase of a condominium owned by Defendant Perry and/or Defendant Ocean. (*Id.*) Greenpoint asserts that the application included several documents that materially misstated Coleman's financial situation and the characteristics and value of the condominium Coleman sought to purchase. (*Id.* ¶¶ 19-29.)

In particular, Greenpoint claims that Family First included in this application a fraudulent appraisal of the condominium prepared by Lucas, the president and owner of Intellectual Management. (*Id.* ¶ 27.) Lucas submitted the appraisal at the request of Allen, a Family First loan officer, and Perry, the owner of H.A.A. and Ocean. (*Id.* ¶¶ 4, 12, 27.) According to Greenpoint, the appraisal falsely stated that the condominium was housed in a building that had been completely

---

[1] The court has diversity jurisdiction. Greenpoint is incorporated in New York and has its principal place of business in California; all of the Defendants are residents and citizens of Illinois. (2d Am. Compl. ¶¶ 2-13.)

2

developed and that fifteen of the sixteen units had already been sold. (*Id.* ¶ 28.) Lucas allegedly also misstated the market value of the condominium. (*Id.*) Greenpoint claims that Lucas made these misstatements knowing that they were false. Greenpoint asserts that Allen and Perry were also aware of the false statements included in the appraisal. (*Id.*)

In reliance on the representations made in the documents submitted with the Coleman loan application, Greenpoint extended a mortgage loan for $180,000.00 to Coleman. (*Id.* ¶ 30.) Greenpoint alleges that Ocean and/or Perry, the sellers of the condominium, received a total of $187,982.00 in connection with the mortgage loan transaction. (*Id.* ¶ 31.) Greenpoint further asserts that Defendants, other than Family First and ShoreBank, all received and retained a benefit as a result of their participation in the Coleman loan application. (*Id.* ¶¶ 60-61.) Shortly after closing, Coleman defaulted on the mortgage and Greenpoint was obligated to repurchase the loan from one of its investors. (*Id.* ¶ 33.) Notably, Greenpoint has made no allegations regarding the actual market value of the condominium, or the amounts it actually lost as a result of the alleged fraud.

## **DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must provide a "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2), cited in *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (*per curiam*). Specific facts are not required; "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted)) (internal quotation marks omitted). When considering a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted). The complaint will survive a 12(b)(6) motion to dismiss as long as it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum*

3

*Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

**I.    Unjust Enrichment**

In Count IV, Greenpoint alleges that all Defendants, with the exception of Family First and ShoreBank, were unjustly enriched as a result of their participation in the Coleman loan application. (2d Am. Compl. ¶¶ 60-62.)  Greenpoint claims that it conferred a benefit on each of these Defendants and that the Defendants' retention of this benefit violates fundamental principles of justice, equity, and good conscience. (*Id.* ¶¶ 61-62.)  In its motion to dismiss, Intellectual Management contends that its real estate appraisal was submitted pursuant to the Agreement between Greenpoint and Family First. (Mot. to Dismiss, at 4.)  Given Greenpoint's allegations that a contract existed, (2d Am. Compl. ¶¶ 16, 35-42), Intellectual Management argues, Greenpoint may not bring a claim for unjust enrichment.[2]  (Mot. to Dismiss, at 4.)  Greenpoint counters that the Agreement was between itself and Family First, and that it thus had no contractual relationship with Intellectual Management that might preclude an unjust enrichment claim against the latter. (Pl.'s Resp., at 5.)  Greenpoint also maintains that even if it did have a contractual relationship with Intellectual Management, Greenpoint would be entitled to plead a claim for unjust enrichment as an alternative to a breach of contract claim. (*Id.* at 6.)

As Intellectual Management correctly points out, Illinois courts have held that the existence of a contract between the parties generally precludes a claim for unjust enrichment. *See, e.g., People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 496-97, 607 N.E.2d 165, 177 (1992) (doctrine of unjust enrichment inapplicable where express contract for construction project governed relationship between plaintiff and defendant). In this case, the Second Amended

---

[2] Intellectual Property also claims that Greenpoint failed to allege the exact benefit that Intellectual Management received. (Mot. to Dismiss, at 5-6.)  Greenpoint's allegation that Intellectual Management received and retained a benefit, (2d Am. Compl. ¶ 11), is sufficient to survive a Rule 12(b)(6) motion, however; if discovery fails to uncover any evidence of such a benefit (an appraisal fee, for example), Defendants may be entitled to summary judgment.

Complaint alleges the existence of a contract between Greenpoint and Family First—the Agreement. There are no allegations of any contractual relationship between Greenpoint and Intellectual Management, however. Although Intellectual Management contends that its appraisal was submitted to Greenpoint "pursuant to" the Agreement, the complaint contains no such allegation. Instead, Greenpoint alleges that the appraisal "was prepared by Lucas, at Allen's request." (2d Am. Compl. ¶ 27.) According to the complaint, Family First submitted Coleman's loan application "pursuant to" the Agreement; but there are no allegations that Intellectual Management provided its appraisal to Allen and Family First "pursuant to" that, or any other, contract. Plaintiff's unjust enrichment claim against Intellectual Management thus does not appear to be precluded by any agreement with Intellectual Management.

All of the cases cited by Intellectual Management involve contracts between the plaintiff and the party against whom an unjust enrichment claim is stated. *See, e.g., Hartigan*, 153 Ill. 2d at 496-97, 607 N.E.2d at 177; *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 864, 692 N.E.2d 798, 812 (1st Dist. 1998) (contract governed newly-formed business relationship between plaintiff and defendant); *Graham v. Midland Mortgage Co.*, 406 F. Supp. 2d 948, 952 (N.D. Ill. 2005) (contract between plaintiff property owner and defendant mortgagees). Absent any alleged contractual relationship between Greenpoint and Intellectual Management, Intellectual Management is not entitled to dismissal of Greenpoint's unjust enrichment claims.

## II.  Consumer Fraud

In Count V, Greenpoint alleges that Intellectual Management knowingly made material misstatements of fact in the real estate appraisal it submitted in connection with the Coleman loan application. (2d Am. Compl. ¶¶ 64-65.) These misstatements were allegedly made with the intention that Greenpoint would rely upon them and were prepared by Intellectual Management during the course of commerce. (Id. ¶¶ 66-67.) Greenpoint asserts that Intellectual Management has thus violated the Illinois Consumer Fraud Act, which proscribes fraud and other deceptive

5

practices. *See* 815 ILCS 505/2. Intellectual Management urges that the Act does not apply to a mortgage loan transaction between businesses. (Mot. to Dismiss, at 7.) In the alternative, Intellectual Management argues that even if the Consumer Fraud Act applies, Greenpoint has failed to establish that Intellectual Management's acts satisfy the requisite "consumer nexus" under the Act. (Mot. to Dismiss, at 7-8.)

The Consumer Fraud Act is intended primarily to provide consumers with broader protections against unfair or deceptive acts. *Indus. Specialty Chems., Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995). The Act defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Neither party contends that Greenpoint qualifies as a "consumer" under this statutory definition.

As Greenpoint asserts, Illinois courts have held that a non-consumer business may have standing under the Act in certain limited circumstances. *Indus. Specialty Chems.,* 902 F. Supp. at 812; *see also Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (citations omitted). In a dispute between two non-consumer businesses, the proper test for determining whether the Consumer Fraud Act applies has traditionally been whether the alleged conduct "'involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *See Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 323, 783 N.E.2d 217, 221 (2d Dist. 2003) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33, 41 (2d Dist. 1989)). Absent such a consumer nexus, the Act does not apply; it does not govern "every individual breach of contract" claim and does not furnish an "additional and redundant remedy" to all common-law breach of contract and fraud claims. *See Lake County Grading Co. v. Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452, 459, 654 N.E.2d 1109, 1116-17 (2d Dist. 1995).

Greenpoint minimizes the consumer nexus requirement, arguing that the requirement need

only be applied to a small subset of disputes between non-consumer businesses. (Pl.'s Resp., at 4.) To support this contention, Greenpoint cites *Anchor Mortgage Corp. v. Certified Credit Reporting, Inc.*, No. 00 C 4248, 2000 WL 1700147 (N.D. Ill. Nov. 8, 2000). The plaintiff in *Anchor*, a mortgage broker, contracted with the defendant to obtain credit reports on various loan applicants using the defendant's software. *Id.* at *1. Five years later, after auditing defendant's invoices and discovering numerous overcharges, plaintiff filed a Consumer Fraud Action. *Id.* The defendant moved to dismiss, arguing that its conduct did not implicate "consumer protection concerns," *id.* at *2, but the court declined to enforce the "consumer nexus" requirement, for two reasons: first, the court concluded that the requirement likely applied only when the plaintiff is not a "consumer" as defined by the Act, and the plaintiff indeed alleged that it was a "consumer"; and second, the court found that the "consumer nexus" requirement comes into play only in "routine breach of contract cases," whereas the plaintiff had alleged not an "isolated" or "routine" breach, but deliberate wrongful conduct over a period of more than five years. *Id.* at *2-3.

Greenpoint characterizes *Anchor* as standing for the proposition that the consumer nexus requirement only needs to be satisfied in disputes between non-consumer businesses involving a routine or isolated breach of contract. (Pl.'s Resp., at 4.) Greenpoint notes that it has not asserted a breach of contract claim against Intellectual Management and argues, as a result, that the court need not enforce the consumer nexus requirement. (*Id.*)

The court does not share this extremely broad reading of *Anchor*, which appears inconsistent with oft-cited Illinois cases addressing the consumer nexus requirement. *See, e.g., Downers Grove Volkswagen*, 190 Ill. App. 3d at 543, 546 N.E.2d at 40-41 (applying consumer nexus requirement to dispute involving two non-consumer businesses with no contractual relationship; plaintiff stated only tort claims in addition to consumer fraud claim). In any event, *Anchor* is distinguishable from this case. The court declined to apply the requirement in *Anchor* in light of the five-year period of continuous alleged wrongful conduct; here, in contrast, Greenpoint

7

has alleged a fraud consisting of a single, isolated event. The court thus concludes that Greenpoint must satisfy one of the two prongs of the consumer nexus requirement in order to have standing to state a claim under the Consumer Fraud Act.

Given that Greenpoint does not allege that Intellectual Management's conduct was "directed to the market generally," Greenpoint must establish that Intellectual Management's actions in connection with the Coleman loan application "implicate[] consumer protection concerns." See *Bank One Milwaukee*, 336 Ill. App. 3d at 323, 783 N.E.2d at 221. Illinois courts have noted that "[n]either the Consumer Fraud Act nor its legislative history provides definitional parameters for the phrase 'implicates consumer protection concerns.'" *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 159, 698 N.E.2d 257, 269 (2d Dist. 1998). In the absence of a clearly delineated definition, courts generally have "required some allegations of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues." *Credit Ins. Consultants, Inc. v. Gerling Global Reinsurance Corp. of Am.*, 210 F. Supp. 2d 980, 986 (N.D. Ill. 2002) (citations omitted). Where these types of allegations are lacking, courts have rejected invitations to apply the Act to any cause of action encompassing a primarily private wrong. *See Lake County Grading Co.*, 275 Ill. App. 3d at 460, 654 N.E.2d at 1116-17 (finding "no inherent consumer interest implicated in a construction contract between a general contractor and a subcontractor"); *cf. Downers Grove Volkswagen*, 190 Ill. App.3d at 534, 546 N.E.2d at 41 (allegedly deceptive brochure distributed by defendant, which falsely stated prices plaintiff charged for service inspections, could form basis of cause of action under the Act).

Greenpoint does not allege that Intellectual Management's conduct has endangered public health and safety, or misled customers about a competitor. Citing *Bank One Milwaukee*, Greenpoint nevertheless maintains that the allegedly fraudulent real estate appraisal "implicates consumer protection concerns." (Pl.'s Resp., at 4-5.) The plaintiff in *Bank One Milwaukee* alleged that the "defendants forged her signature as a cosigner on a contract for the sale of a truck

purchased by her nephew." 336 Ill. App. 3d at 320, 783 N.E.2d at 219. The defendants argued that she lacked standing under the Act because given the alleged forgery, she had not purchased the truck and was therefore not a "consumer." 321, 783 N.E.2d at 219. Finding that argument inapplicable, the court held that despite the fact she was not technically a consumer, she nonetheless had standing because the alleged conduct implicated consumer protection concerns. 336 Ill. App. 3d at 324, 783 N.E.2d at 222.

The circumstances here are quite dissimilar. The *Bank One Milwaukee* plaintiff was not a business, but rather a natural person who "alleged that a merchant bound her to a commercial transaction through a fraudulent act," and who lacked "consumer" status only due to that fraudulent act. *See* 336 Ill. App. 3d at 324, 783 N.E.2d at 222. Greenpoint, in contrast, is a non-consumer business that knowingly and voluntarily entered into a mortgage loan agreement and presumably knew or should have known of the potential risks of relying on the appraisal prepared by Intellectual Management.

These facts more closely mirror those in *Ivanhoe Financial, Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 546934 (N.D. Ill. Feb. 26, 2004). There, as here, the defendant provided the plaintiff with mortgage loan applications pursuant to a broker/lender agreement. *Id.* at *1. The plaintiff alleged that the defendant submitted false documents as a part of two residential mortgage loan applications; those documents falsely inflated both the value of the property securing the mortgage and the loan applicant's earnings. *Id.* The plaintiff moved to strike the defendant's affirmative defense that the plaintiff lacked standing to sue under the Consumer Fraud Act, contending that its subsequent resale of under-secured mortgages ultimately implicated consumer protection concerns, but the court disagreed. *Ivanhoe Financial, Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 2091997, at *5 (N.D. Ill. Sept. 15, 2004). Noting that the alleged "consumers"—the banks that purchased the mortgages from the plaintiff—were "sophisticated entities that purchase loans in the ordinary course of business," the court concluded that such

purchasers were "fully capable of protecting themselves via contract and tort law" and thus were not the type of entities that the Act was designed to protect. *Id.* at *6.

Given Greenpoint's similar business status and the type of fraud that is alleged in this case, the court is not persuaded that the holding in *Bank One Milwaukee* is applicable here. Greenpoint further argues, however, that Intellectual Management's alleged conduct implicates consumer protection concerns when viewed within the larger context of nationwide mortgage fraud. (Pl.'s Resp., at 5.) Pointing to a series of articles in the *Chicago Tribune*, Greenpoint asserts that losses due to this type of fraud exceeded $1 billion in 2005, and that such losses are often absorbed by consumers in the form of higher loan costs, interest rates, and higher taxes resulting from decreased property tax revenue. (*Id.* (citing David Jackson, *Mortgage Fraud is the Thing to do Now*, CHI. TRIB., Nov. 5, 2005, at C1).) As Intellectual Property points out, however, the cited materials are outside the pleadings and are thus not properly considered on a motion to dismiss. *See* Fed. R. Civ. P. 12(b). In any event, even assuming *arguendo* that consumer protection concerns are in fact implicated by mortgage fraud, Greenpoint has failed to sufficiently link any consumer injuries to the single, isolated fraudulent act alleged in this case. There is nothing to indicate that Intellectual Management's provision of an allegedly fraudulent real estate appraisal will have any but the most attenuated effects on consumers and taxpayers. Without any showing of a "direct or inherent impact on consumers," this court concludes that Greenpoint has not satisfied the consumer nexus requirement. *See IFC Credit Corp. v. B. Braun Med., Inc.*, No. 03 C 8815, 2004 WL 2921870, at *2 (N.D. Ill. Dec. 15, 2004) (noting that the "potentiality of collateral consumer costs obviously flows from nearly every contractual breach"; and concluding that allegedly fraudulent medical equipment leases purchased by plaintiff credit corporation did not satisfy consumer nexus requirement because the allegations indicated a merely "speculative collateral impact on hospitals"). The court concludes that Greenpoint therefore lacks standing to state a claim under the Consumer Protection Act.

**CONCLUSION**

For the reasons stated above, Intellectual Management's motion to dismiss (141) is granted with respect to Count V and denied with respect to Count IV. Count V is dismissed without prejudice. Defendants are directed to answer Count IV within 21 days. Status conference is set for 10/2/07 at 9:00 a.m.

ENTER:

Dated: September 4, 2007

_____
REBECCA R. PALLMEYER
United States District Judge